44 N.J. Super. 443 (1957)
130 A.2d 903
IN THE MATTER OF THE PRESENTMENT RETURNED TO THE SUPERIOR COURT OF NEW JERSEY, LAW DIVISION, UNION COUNTY, BY THE UNION COUNTY GRAND JURY, ON MARCH 28, 1957.
Superior Court of New Jersey, Law Division.
Decided April 5, 1957.
*444 HUGHES, J.S.C.
Presentment No. 2 returned by the January session, 1954 term, grand jury in Union County, and directed to be filed and publicized by the order of this court, dealt importantly with law enforcement in the City of Elizabeth. It recited that grand jury's finding that:
"* * * the structure, organization and supervision of the Police Department of the City of Elizabeth was obsolete and incompatible with the efficient administration of justice * * *."
That presentment recognized and condemned the existence, as a pattern of conduct, of interference by the board of *445 police commissioners with the internal administration of the police department, including transfers, changes in assignment, promotions and demotions without prior consultation with any of the superior officers of the police force. It determined that such interference and mismanagement had resulted in a collapse of morale and weakening of that spirit of pride, aggressiveness and wholehearted devotion to duty which is the foundation of a fine police department.
That presentment recommended new legislation more clearly defining the respective jurisdictional functions of civilian administrators such as the police commissioners, on the one hand, and the chief of police and other officers in the chain of command, on the other. Pending the enactment of such legislation, that grand jury urged that under the executive leadership of the mayor there should be an interpretation of existing law that would confine the responsibility and authority of the police commissioners to policy and administrative matters, leaving operational management to the chief of police and his subordinate officers, who would thereby be restored to their rightful position of authority and responsibility.
The final recommendation of that grand jury's presentment was this:
"9. That the Common Council of the City of Elizabeth forthwith appropriate funds for the services of a competent expert to make a survey of the requirements of the Elizabeth Police Department as to personnel and equipment, allocation of personnel, revision of the rules and regulations, and such other findings as might be pertinent."
In this setting and after the lapse of almost two years during which no such departmental survey has been had, the extended grand jury of the September stated session, 1956 term, made an intensive investigation into the question of juvenile delinquency and violence and the need for improved laws, court structures and supportive services to deal therewith. In the course of such general investigation *446 and its relevant evaluation of juvenile aid bureaus within the police departments of this county, the attention of that body was attracted to the presentment returned by its predecessor grand jury. It is evident from the presentment now offered the court by the current grand jury that it has redetermined that specified shortcomings in the police department continue to exist, that the need for a comprehensive survey of its condition is no less emergent now than it was in 1955, and that existing weaknesses in departmental morale and discipline should be eliminated. It determines that the enforcement of law and suppression of juvenile delinquency, twin and indispensable objectives of the due administration of public justice, call for the implementation of the previous grand jury presentment at the starting point of a definitive survey of the department.
The presentment presently offered affirms the obvious fact that the status of law enforcement in the largest community in the county is closely connected with the administration of justice in the whole of Union County, and thus clearly within the rightful province and responsibility of the grand jury of the county. It distinguishes the legislative function of the members of the city council in appropriating the funds required for the recommended survey and the executive responsibility of the mayor and board of police commissioners in seeing that the survey is had.
The presentment, therefore, recommends that the common council appropriate the funds necessary to provide for a thorough and intelligent survey of the organization, personnel and equipment of the Elizabeth police department, and this echoes the recommendation presented by its predecessor grand jury.
I have devoted grave consideration to this presentment, as the law requires me to do, for reasons equally important to the welfare of the body politic and to the reputation of the individual. I have determined that the criticism expressed of the failure of the members of council to provide for the police survey, while severe, does not *447 amount to the charge of the crime of nonfeasance in office; if it did, it would be my judicial duty to reject the presentment, remitting it to the grand jury for the return of appropriate indictments. It is unquestionably the province and the right of the common council members, who are the elected representatives of the people, to adhere to the dictates of their individual judgment and conscience, unless such conduct violates so clearly a public duty placed upon them as to be equivalent to nonfeasance in their office. I find no such legal posture here, and in my opinion, the presentment does not in any sense indict the council members as nonfeasant in the duties of their public office.
By the same token, however, I am required by law to determine whether the grand jury's presentment deals with public affairs which are within the proper field of its inquisitorial scrutiny. Guided by the course of the law as it has existed in this State from colonial times, and as restated by the New Jersey Supreme Court in recent years in a matter Concerning a Presentment Made by the Camden County Grand Jury in 1951, reported in 10 N.J. 23, I must answer this question in the affirmative. A potential breakdown in law enforcement or in the suppression of juvenile delinquency and violence, wherever it occurs and on whatever level of authority, is a public matter clearly within the proper orbit of a grand jury's responsibility and duty.
It is difficult to conceive of any public affair more crucial to the common welfare than the strength and integrity of the police department of a major city. Weakness and disorganization in that department, whether existing or imminent, poses a threat to property, morals, general welfare and even life itself, affecting every citizen. A police department weakened from whatever cause, whether from the outrage of outside political interference, or by the lassitude of official neglect, is of the greatest danger to a modern city and a problem for the public conscience, no less than it is a concern for the public's self-protection. And it is within the authority of this grand jury to say so, *448 for the grand jury system provides a readily available group of representative citizens empowered, as occasion may demand, to voice the conscience of the community. No community desires to live a hairbreadth above the criminal level, or without the protection of an efficient guardian of the public order and safety. The recommendation of the instant presentment is no more than this in brief language: "Find out what the condition of the Police Department is and then build it to the organizational strength it should have to serve the community to its maximum efficiency." This is a legitimate and proper recommendation of a grand jury and I, therefore, determine that the subject of the instant presentment is clearly within the province of the grand jury.
The presentment also refers to possible political motivations, although the grand jury does not single out either one of the major political parties as being responsible therefor. It is not part of my judicial function to state whether or not I agree with this reference, but rather to determine whether it is within the grand jury's province to suggest it. As I have said, the action of the council members, if based upon their best judgment and conscience, is clearly within their official responsibility. On the other hand, it is equally within the grand jury's right to urge that political considerations be forgotten in dealing with a police department.
Although often mentioned in critical manner, politics is not, of course, evil in itself. On the contrary, it is one of the wellsprings of the democratic form of government in which we live. It is defined by Webster as the art and science of government. It is in the strength and integrity of political endeavor that are nurtured the sinews of our representative form of government. But there are certain parts of our governmental and community life which politics should not touch. One is the judicial branch of government. The courts should not be influenced by political considerations, lest the true course of the impartial administration of justice be polluted.
*449 In the same sense, and for precisely the same reasons, the police department should be untouched by politics. It is degrading to the individual policeman, and of the greatest danger to the safety and welfare of the community, that a police officer approach the performance of his official duty with political considerations in mind, whether of fear or of favoritism. The enforcement of law by the police department is so much a part of the administration of justice that it, like the courts, must be absolutely free of politics. It is within the authority of a grand jury to restate this obvious and undeniable truth as often as it believes necessary.
It remains for me to determine whether any part of the presentment should be struck out as being (1) false, or (2) based on partisan motives, or (3) indulging in personalities without basis, or (4) for other good cause appearing. My careful and repeated examination of this presentment absolves it, in my opinion, of any such imperfection. I have considered under the heading "good cause" whether that part of it which is critical of the Department itself and necessarily of some of its members, should not be struck out, inasmuch as it has long been obvious to everyone that most, if not all of the shortcomings of this Department have arisen from external and not internal causes. However, viewed in the setting of its affirmance of the predecessor presentment's finding that
"It is this Jury's considered opinion that the great majority of Elizabeth police officers are honest and conscientious in the performance of their duties"
and that
"* * * with proper guidance and leadership, a large majority of the men would respond enthusiastically to their duty and reflect great credit upon the City of Elizabeth"
I believe that any unjust reflection which the present presentment might be understood as casting on the individual police officers is effectively avoided by these references. If the police officer is to be restored to his proper stature of *450 influence and command the respect of adult as well as juvenile offenders, and if young men are to continue to be attracted to the high vocation of police work, it is essential that policemen and police departments not be exposed to needless and unjust criticism, which overlooks the courage, honesty and devotion to duty which most policemen represent. I do not think this presentment, in the circumstances, could be so misunderstood.
The presentment is, therefore, valid and I direct that it be filed, publicized and transmitted to the appropriate interested persons listed therein.
The grand jury is discharged from further service with the thanks of the court. Your accomplishment of that service, in my opinion, has been of distinguished value to your fellow citizens.